IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LA TORTILLERIA, INC., )
)
    Plaintiff, )
)
v. ) 1:12CV408
)
NUESTRO QUESO, LLC, )
)
    Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant Nuestro Queso's motion to dismiss the amended complaint for failure to state a claim. (Docket Entry 19.) All matters are ripe for disposition. For the reasons that follow, the Court recommends that Defendant's motion to dismiss be denied.

I. **BACKGROUND**

Plaintiff La Tortilleria, Inc. is a North Carolina corporation that distributes Mexican food products. (Am. Compl. ¶ 1, Docket Entry 14.)[1] Defendant Nuestro Queso, LLC, a Delaware corporation with its principal place of business in Illinois, manufactures cheese and other dairy products. (*Id.* ¶ 2.) Plaintiff claims that in December 2010 it agreed to an oral contract with Defendant in reliance on Defendant's commitments, which were defined over months of negotiation conducted by Defendant's co-founder and then-president Guy

---

[1] This action was originally filed in state court in Forsyth County on March 29, 2012. On April 25, 2012, Defendant removed the action to this court pursuant to 28 U.S.C. § 1441. (Notice of Removal, Docket Entry 1.) Plaintiff filed an amended complaint on June 18, 2012. (Docket Entry 14.) Defendant's motion to dismiss addresses the amended complaint. (Docket Entry 19.)

Paproski, and investor and manager Mark Braun and originally outlined in a March 2009 letter of intent. (*Id.* ¶ 27.) Plaintiff alleges it accepted Defendant's offer to co-package Plaintiff's Cuervito Morado brand cheese at a "comparable quality and equivalent pricing" to what Plaintiff was receiving from its current co-packer Mexican Cheese Producers, a subsidiary of Sigma Alimentos (hereinafter "Sigma"). (*Id.*) The parties allegedly also agreed to cooperate in the "long-term development" of Plaintiff's products alongside Defendant's brand cheeses. (*Id.*) Though both parties were aware the agreement involved the risk that Nuestro Queso would lose money from co-packing the cheese during periods where the cost of milk was high, Plaintiff alleges Paproski represented that Defendant was "willing to risk losing money . . . in order for Nuestro Queso to gain income from co-packing . . . to help stabilize Nuestro Queso's cash flow and to benefit from a broad, mutually beneficial long-term relationship" between the companies. (*Id.* ¶ 22.) Plaintiff alleges that in March 2011 Plaintiff notified Sigma of its intent to move the co-packing business to Defendant, which began production of the Cuervito Morado cheeses in February 2011. (*Id.* ¶ 29.)

Plaintiff claims that the early stages of Defendant's production of the cheeses involved "problems" with both the "quality and prices" Defendant was providing. (*Id.* ¶ 36.) Defendant told Plaintiff these problems were "administrative" issues that would be resolved quickly and, during a March 11 visit to North Carolina, Paproski assured Plaintiff it would be credited for the excess cheese labels purchased from Sigma, the cheeses that failed to meet the quality standard, and the overcharges and freight costs invoiced to Plaintiff "above the parties' agreed upon prices." (*Id.* ¶¶ 32, 36.) Paproski repeated these assurances in an email to Plaintiff on or about March 18, 2011. (*Id.* ¶ 33).

2

In July or August of 2011, Plaintiff claims, after several months of unsuccessful attempts to contact Paproski regarding the outstanding credits and "unacceptable ongoing deficiencies in quality and freight costs," (Am. Compl. ¶ 37), Defendant "unilaterally initiat[ed] a substantial increase" in its prices for the Cuervito Morado cheeses. (Id. ¶ 39). Though Plaintiff explained to Braun that the new prices were "unacceptable," Defendant allegedly refused to relent on the increases, claiming, for the first time, that Nuestro Queso was not willing to lose money co-packing the cheeses based on fluctuations in the cost of milk. (Id. ¶¶ 40-42.)

Plaintiff claims that throughout the summer and early fall of 2011, it repeatedly notified Defendant that these changes were unacceptable into the fall of 2011. (Id. ¶ 43). Braun made a trip to North Carolina to resolve Plaintiff's concerns, during which he informed Plaintiff that Paproski, who was no longer serving as President, had been removed because he "misled people," including Defendant's board of directors. (Id. ¶¶ 46, 50.) Additionally, Paproski had "never informed Nuestro Queso about his representations about developing a broader long-term relationship" between the parties and Braun stated he "would not be surprised if Mr. Paproski representations (sic) had misled La Tortilleria as well." (Id. ¶ 50.) Despite the meeting, Plaintiff's concerns were not resolved. (Id. ¶ 51.)

In December 2011, Defendant issued a recall of various cheeses, including the Cuervito Morado brand. (Id. ¶ 52.) Plaintiff was forced to inform its customers of the recall; one large customer, Wal-Mart, "immediately stopped selling" all Cuervito Morado brand cheeses. (Id. ¶¶ 53-54.) Plaintiff claims that through the recall, Wal-Mart learned that Defendant's facility was "not properly certified" and stated it would only begin re-selling

3

Cuervito Morado cheeses if Plaintiff could prove they were being produced by a properly certified manufacturing plant. (*Id.* ¶ 54.)

In January 2012, Plaintiff informed Defendant that it was transferring co-packing back to Sigma due to Defendant's failure to honor its representations and the agreement the parties had reached. (*Id.* ¶ 55.) Plaintiff now sues for compensatory and, in the alternative, punitive damages, alleging breach of contract, negligent misrepresentation, fraud in the inducement, and unfair and deceptive trade practices.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.* The test does not require the complaint to have "'detailed factual allegations,' . . . [but rather] plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678-79).

In considering the motion to dismiss, the Court must view the complaint in the light most favorable to Plaintiff and resolve every doubt in Plaintiff's favor. *See Doe v. Virginia Dept. of State Police*, 713 F.3d 745, 752 (4th Cir. 2013) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d

1130, 11134 (4th Cir. 1993)). Plaintiff's allegations are to be taken as true for the purpose of ruling upon the motion. *Id.* In addition, any inference reasonably drawn from the complaint must be considered together with Plaintiff's allegations of facts. *See Murray v. City of Milford, Conn.*, 380 F.2d 468, 470 (2d Cir. 1967); *Neuman v. Levan*, No. 8:08-03418-HFF, 2009 WL 1856569, at *1 (D.S.C. June 26, 2009).

Breach of Contract (First Cause of Action)

In a breach of contract action, a complainant must show that there is "(1) existence of a valid contract, and (2) breach of the terms of that contract." *Sanders v. State Personnel Comm'n*, 197 N.C. App. 314, 320, 677 S.E.2d 182, 187 (2009) (internal citations omitted). In North Carolina, a complaint for breach of contract is sufficient when it "gives notice of the events and transactions and allows the adverse party to understand the nature of the claim and to prepare for trial." *Smith v. N.C. Farm Bureau Mutual Ins. Co.*, 84 N.C. App. 120, 123, 351 S.E.2d 774, 776, *aff'd*, 321 N.C. 60, 361 S.E.2d 571 (1987).

Here, Defendant argues that Plaintiff's claim must fail because the purported oral agreement between the parties was "impermissibly vague and indefinite." (Def.'s Mem. Supp. Mot. to Dismiss at 11, Docket Entry 20.) Defendant claims that because the phrases "equivalent pricing" and "comparable quality" are too indefinite to be enforced, and because the agreement purportedly provided no details as to the form of the parties' cooperation in the development of branded cheeses, the contract is invalid. (*Id.* at 11-12.) Furthermore, Defendant notes that Plaintiff failed to allege any agreement as to the "duration of the purported oral agreement." (*Id.* at 12.) Consequently, Defendant argues, Plaintiff's breach of contract claim cannot stand because Defendant was entitled to terminate the agreement

5

or change the price at which the product was sold "at any time" during the parties' relationship. *(Id.)*

Defendant's arguments fail for two reasons. First, in contrast to Defendant's claims that the terms "equivalent" and "comparable" are too vague to bear any real meaning, Plaintiff had provided a clear benchmark for comparison – the pricing and quality offered by Sigma. Moreover, as Plaintiff has alleged in the Amended Complaint, Defendant was also aware that both Plaintiff's contract with Sigma and industry standards dictate that co-packers incorporate the cost of freight and labels into the overall price for each type of cheese, issue credits for cheeses that arrive damaged or spoil too quickly, and utilize bi-lateral negotiations before implementing any pricing changes. (Am. Compl. ¶ 5.)

Secondly, North Carolina courts have regularly found that while clear and unambiguous contracts may be interpreted by the court as a matter of law, "if the language used by the parties is ambiguous and their intention unclear, interpretation of the contract is for the jury under proper instructions from the court." *Parker Marking Sys., Inc. v. Diagraph-Bradley Indus., Inc.,* 80 NC. App. 177, 181, 341 S.E.2d 92, 95, *disc. rev. denied,* 317 N.C. 336, 346 S.E.2d 92 (1986); *see also Marsh Realty Co. v. 2420 Roswell Ave.,* 90 N.C. App. 573, 576, 369 S.E.2d 113, 115 (1988) ("If the language used in a contract is ambiguous and the parties' intention is unclear, the interpretation of the contract is for the jury."); *Mosley & Mosley Builders, Inc. v. Landin Ltd.,* 87 N.C. App. 438, 444-45, 361 S.E.2d 608, 612 (1987)("Where . . . parol evidence is admissible to explain the meaning of ambiguous language used in a contract, it is for the jury, under proper instructions, to determine what meaning the parties intended to give to the language."); *Cleland v. Children's Home, Inc.,* 64 N.C. App. 153, 157, 306

S.E.2d 587, 590 (1983) ("Ambiguities in contracts are to be resolved by the jury upon consideration of the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." (internal quotation marks omitted)).

"The law . . . does not favor the destruction of contracts on account of uncertainty, and 'the courts will, if possible, so construe the contract as to carry into effect the reasonable intent of the parties . . .'" *Welsh v. N. Telecom, Inc.*, 85 N.C. App. 281, 290, 354 S.E.2d 746, 751 (1987) (internal citations omitted). Plaintiff has met its burden by alleging, with specificity, the dates, events, and transactions relating to the contract, *Smith*, 84 N.C. App. at 123; 351 S.E.2d at 776; indeed, there is little ambiguity in the meaning of the Defendant's promise to incorporate freight costs into the price of the cheese and its consequent failure to do so. If, as Defendant argues, the terms concerning its agreement with Plaintiff were not "indefinite and ambiguous" and form "the basis of a contract claim," the determination of the contract's validity and the Defendant's breach thereof as a matter of law is impermissible. (Def.'s Mem. Supp. Mot. to Dismiss at 11-12, Docket Entry 20.) Therefore, Defendant's motion to dismiss as to the first cause of action should be denied.

A. <u>Negligent Misrepresentation (Second Cause of Action)</u>

In its second cause of action, Plaintiff alleges that Defendant, through its officers and employees, made several misrepresentations to Plaintiff which were relied upon by Plaintiff and which influenced Plaintiff's decision to transfer the co-packing of its cheeses from Sigma to Defendant. (Am. Compl. ¶¶ 61-66.) North Carolina has adopted the definition of negligent misrepresentation set forth in the RESTATEMENT (SECOND) OF TORTS. *Driver v.*

7

*Burlington Aviation, Inc.*, 110 N.C. App. 519, 525, 430 S.E.2d 476, 480 (1993). Section 522 of the RESTATEMENT 2D provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Brinkman v. Barrett Kays & Associates, P.A.*, 155 N.C. App. 738, 740, 575 S.E.2d 40, 43 (2003); *see also Schlieper v. Johnson*, 195 N.C. App. 257, 262-63, 672 S.E.2d 548, 552 (2009) (applying the definition in Subsection 1 to find misrepresentation between parties in settlement negotiations).

Defendant has argued that the negligent misrepresentation claim should be dismissed for two reasons. First, Defendant argues that this cause of action (along with those for fraud in the inducement and unfair and deceptive trade practices) is a "thinly disguised attempt" to turn breach of contract claims into tort claims, a pleading strategy forbidden under North Carolina law. (Def.'s Mem. at 7-8; 9, Docket Entry 20.) Secondly, Defendant contends that the amended complaint fails to allege that Defendant owed Plaintiff a duty of care "separate and independent" of their contractual agreement, or that Defendant demonstrated the

requisite "malice or recklessness" sufficient to convert these into tort claims. (*Id.* at 9.) *See US LEC Commc'ns Inc. v. Qwest Commc'ns. Corp.*, No. 3:05-CV-11, 2006 WL 1367383, at *2 (W.D.N.C. May 15, 2006).

Defendant is correct in asserting that both North Carolina courts and the Fourth Circuit have found attempts by plaintiffs to "'manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim' to be 'inconsistent both with North Carolina law and sound commercial practice.'" *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998) (quoting *Strum v. Exxon Co.*, 15 F.3d 327, 329 (4th Cir. 1994)). North Carolina has recognized an independent tort arising out of breach of contract only in "carefully circumscribed" circumstances. *Strum*, 15 F.3d at 331 (citing *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 111 (1976)).[2] However, as Plaintiff makes clear in both its Amended Complaint and brief in response to the motion to dismiss, each of its tort claims are predicated not on Defendant's alleged breach of contract, but on misrepresentations made "*during* the parties' contract negotiations," implicating Defendant's duty to "provide accurate information" during the negotiations of the parties' agreement. (Pl.'s Resp. at 12-14, Docket Entry 22)(emphasis added) (citing Am. Compl. ¶¶ 15-17, 22-24.) The availability of this tort remedy has been recognized by North Carolina courts. In *Schlieper*, the North Carolina Court of Appeals noted that:

> The tort of negligent misrepresentation occurs when in the course of a business or other transaction in which an individual has a pecuniary interest,

---

[2] Similarly, a mere breach of contract, even if intentional, is not an unfair or deceptive act under the North Carolina UDTPA. *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989). Under *Bartolomeo*, a plaintiff "must show substantial aggravating circumstances attending the breach to recover under the Act." *Id.* at 535.

> he or she supplies false information for the guidance of others in a business transaction, without exercising reasonable care in obtaining or communicating the information.

195 N.C. App. at 262-63, 672 S.E.2d at 552 (quoting *Fulton v. Vickery*, 73 N.C. App. 383, 388, 326 S.E.2d 354, 358 (1985), *review denied*, 313 N.C. 599, 332 S.E.2d 178 (1985)); *see also Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 218, 513 S.E.2d 320, 323 (1999) (citing RESTATEMENT (SECOND) in defining a breach of the duty owed in negligent misrepresentation); *Emergys Corp. v. Consert, Inc.*, No. 10 CVS 13792, 2012 NCBC 19, 2012 WL 1143647, at *5 (N.C. Super. Ct. Apr. 5, 2012) (unpublished) (applying *Marcus Bros. Textiles* to find that "alleged misrepresentations made during the parties' contract negotiations that induced Plaintiff to enter into the Agreement, when it otherwise would not have done so . . . are distinct from a breach of contract action"); *Media Network, Inc. v. Mullen Adver., Inc*, Nos. 05 CVS 7255, 05 CVS 15428, 2007 NCBC 1, 2007 WL 2570715, at *16 (N.C. Super. Ct. Jan. 19, 2007) (unpublished) (rejecting the defendant's argument that the plaintiff merely alleged breach of contract, where the complaint contained allegations of misrepresentations made during contract negotiations, giving rise to separate tort claims).

Here, Plaintiff has met its burden under *Schlieper* and *Fulton*, pleading that Defendant had a "pecuniary interest" in Plaintiff transferring its co-packing from Sigma to Defendant, Paproski and Braun respectively provided false information regarding Defendant's willingness to lose money and later resolve the outstanding credits and surfeit charges, and Plaintiff relied on these misrepresentations to its detriment, as demonstrated by its termination of its co-packing partnership with Sigma and later decision to remain in the parties' oral contract, despite the poor quality and higher prices of Defendant's cheese. (Am.

Compl. ¶¶ 15-16, 22-23, 25, 27, 29.) None of the North Carolina Court of Appeals or North Carolina Supreme Court cases impose an obligation on Plaintiff to allege Defendant owed a duty of care "separate and independent" of the contractual agreement or demonstrated the requisite "malice or recklessness" and indeed, Defendant cites only an unpublished Western District of North Carolina opinion for this proposition. *US LEC Commc'ns Inc.*, 2006 WL 1367383, at *2. Plaintiff's claim should not be dismissed on this ground.

It should be noted that while the Middle District of North Carolina has required plaintiffs to plead negligent misrepresentation with particularity, *Dealers Supply Co., Inc. v. Cheil Indus., Inc.*, 348 F. Supp. 2d 579, 590 (M.D.N.C. 2004), the Fourth Circuit concluded in an unpublished opinion that a claim of negligent misrepresentation under Maryland law does not require heightened pleading because the claim "does not contain an essential showing of fraud." *Baltimore Cnty v. Cigna Healthcare*, 238 Fed. App'x 914, 921 (4th Cir. 2007). However, it is not necessary to determine which standard controls here, because, as detailed above, Plaintiff has met its burden to plead the "time, place, and contents of the alleged fraudulent representation, as well as the identity of each person making the misrepresentation and what was obtained thereby" under both standards. *Liner v. DiCresce*, 905 F. Supp. 280, 287 (M.D.N.C. 1994) (internal citations omitted).

Because Plaintiff has demonstrated its tort claims are separable from its claim for breach of contract and because determinations of liability "in negligent misrepresentations cases . . . [are] highly fact-dependent," *Marcus Bros. Textiles*, 350 N.C. at 220, 513 S.E.2d at 325, this Court recommends that Defendant's motion to dismiss Plaintiff's second cause of action be denied.

B. Fraud in the Inducement and Unfair and Deceptive Trade Practices (Third and Fourth Causes of Action)

In its third cause of action, Plaintiff alleges that Defendant, through its officers and employees, made several false representations and concealed material facts from Plaintiff, in order to deceive Plaintiff into transferring the co-packing of its cheeses from Sigma to Defendant. (Am. Compl. ¶¶ 67-73.) In its fourth cause of action, Plaintiff alleges that Defendant's actions in negligently misrepresenting its commitments and in fraudulently inducing Plaintiff to contract with Defendant, to transfer its co-packing operation from Sigma to Defendant, and to remain under contract with Defendant following its breaches constitute unfair or deceptive practices in violation of N.C. GEN. STAT. § 75-1.1. (Am. Compl. ¶¶ 74-79.) The essential elements of fraud in the inducement are "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *TradeWinds Airlines, Inc. v. C-S Aviation Servs.*, ___ N.C. App. ___, ___, 733 S.E.2d 162, 168 (2012) (quoting *Media Network, Inc. v. Long Haymes Carr, Inc.*, 197 N.C. App. 433, 453, 678 S.E.2d 671, 684 (2009)). In order to establish a claim for unfair trade practices, a plaintiff must show: "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citation omitted). When fraud is alleged, the circumstances constituting fraud must be pled with particularity. Fed. R. Civ. P. 9(b).

North Carolina courts, in interpreting N.C. GEN. STAT. § 75-1.1, have held that an act or practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially

injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). A plaintiff "need not show fraud, bad faith, or actual deception. Instead, it is sufficient if a plaintiff shows that a defendant's acts possessed the tendency or capacity to mislead or created the likelihood of deception." *RD&J Props v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 748, 600 S.E.2d 492, 501 (2004). Proof of fraud in the inducement "necessarily constitutes a violation of Chapter 75 and shifts the burden of proof from the plaintiff to the defendant, which must then prove that it is exempt from Chapter 75's provisions." *TradeWinds Airlines, Inc.*, ___ N.C. App. at ___, 733 S.E.2d at 169.

Here, Defendant argues that Plaintiff's fraud in the inducement claim must fail because the alleged misrepresentations relate "not to past or present facts, but rather to promises of future conduct," which can only form the basis for a fraud claim when "(i) they are made with intent to deceive the promisee, and (ii) the promisor, at the time of making the statement, has no intent to comply." (Def.'s Mem. at 6, Docket Entry 20) (citing *McQuade v. Xerox Corp.*, No. 5:10-CV-149-FL, 2011 WL 344091, at *7 (E.D.N.C. Feb. 1, 2011)). Defendant contends that because Plaintiff "has not sufficiently alleged facts to support an intent to deceive" but merely pleads intent "in conclusory fashion" the fraud claim must fail. *Id.* Defendant also argues that both the fraud and UDTPA claims must fail because Plaintiff's amended complaint indicates that "there could have been no reliance" on Defendant's alleged misrepresentations. *Id.* To support this proposition, Defendant notes that Plaintiff acknowledges that it learned on March 8, 2011 – prior to purchasing any cheese from Defendant and switching its business from Sigma – that Defendant was "not willing to lose money on the sale of cheese." *Id.* at 7 (citing Am. Compl. ¶¶ 29-30, Docket Entry 14).

13

Defendant argues that these circumstances "belie any possibility" that Plaintiff reasonably relied on any purported misrepresentation by Defendant regarding its willingness to lose money in the partnership. *Id.*

However, Defendant's arguments that Plaintiff's claims should fail because they do not adequately allege the elements of intent and reliance are without merit. Rule 9(b) simply states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In suggesting Plaintiff failed to plead intent with sufficient particularity, Defendant premises its argument primarily on an unpublished opinion from the Eastern District of North Carolina. *McQuade*, 2011 WL 344091, at *7-8. However, the Fourth Circuit Court of Appeals has held that the circumstances required to be pled with particularity under Rule 9(b) are the "time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). By contrast, "the second sentence of Rule 9(b) allows *conclusory allegations* of defendant's knowledge as to the true facts and of defendant's intent to deceive." *Harrison*, 176 F.3d at 784 (emphasis added). Therefore, in the absence of any heightened requirement to plead intent, Plaintiff has alleged sufficient facts of time, place and content, together with identity of the person making the representations and what Defendant gained from it – through allegations of the initial letter of intent in March 2009, the agreement reached in December 2010-January 2011, the email from Braun in March 2011, and Defendant's silence as to its willingness to lose

money throughout the negotiations – to meet its burden under Rule 9(b).  *McCauley*, 710 F.3d at 559-60.[3]

Secondly, while Defendant is correct that Plaintiff acknowledges that "on or about March 8, 2011, Mark Braun first expressed his concern about the possibility of Nuestro Queso losing money due to a substantial increase in the cost of milk," Defendant ignores the next sentence in the amended complaint: "Mr. Braun proposed the idea of Nuestro Queso selling a variety of La Tortilleria's Cuervito Morado brand products to Nuestro Queso's customers in an effort to offset the potential losses while the price of milk remained high and expand the parties' long-term relationship." (Am. Compl. ¶ 30, Docket Entry 14.) While Braun did inform Plaintiff of the concerns regarding monetary losses before production of the Cuervito Morado cheese had begun, he did so for the first time approximately two months *after* Plaintiff had accepted Defendant's oral offer. (*Id.* ¶ 27) (noting that Plaintiff orally accepted the oral offer through its President "on or about January 6, 2011"). Braun's disclosure, therefore, could not have prevented Plaintiff from reasonably relying on Paproski's misrepresentations in deciding to accept Defendant's oral offer and to switch co-packing from Sigma to Defendant. Moreover, Plaintiff alleges that it had no reason to believe that Defendant's concerns regarding the escalating cost of milk would result in higher prices for their cheese, as Plaintiff alleges that Braun proposed a solution that would both offset losses and develop the parties' relationship, in keeping with the terms of the original contract. (*Id.* ¶ 30.)

---

[3] Plaintiff's allegations constitute more than the "bare-bones recitations" disfavored by the court in *McQuade*, 2011 WL 344091, at *8.

Because Defendant does not challenge the sufficiency of the amended complaint in regard to any of the facts that must be pled with particularity, this Court recommends that the Defendant's motion to dismiss Plaintiff's third and fourth causes of action (and necessarily, their fifth cause of action for punitive damages) should be denied.

## CONCLUSION

Based upon the foregoing reasons and in the interest of justice, it is hereby **RECOMMENDED** that Defendant's motion to dismiss for failure to state a claim (Docket Entry 19) be **DENIED**.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
March 31, 2014